**In the Interest of L.H. and J.H., Children.**

**F.H., Father, and C.H., Mother,**

**State of Iowa and Gary D. McKenrick, Guardian Ad Litem, Appellants.**

**No. 90–1431.**

Supreme Court of Iowa.

Jan. 22, 1992.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellants State of Iowa and Iowa Dept. of Human Services.

Gary D. McKenrick of Gomez, May, McKenrick & Kelly, Davenport, for appellant guardian ad litem.

Murray W. Bell of Newport, Bell & Oxley, Davenport, for appellee mother.

Robert J. Phelps, Davenport, for appellee father.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and ANDREASEN, JJ.

CARTER, Justice.

The State and the guardian ad litem of two minor children have appealed from a juvenile court order declining to terminate the parental rights of the children's natural parents. Notwithstanding certain issues raised in an appeal by the parents, we will refer to the State, the Iowa Department of Human Services (DHS), and the children's guardian ad litem as appellants and identify the parents as appellees. In addition to the termination-of-rights issue, both appellants and appellees question the dispositional orders of the juvenile court following a CINA adjudication concerning these children.

The court of appeals affirmed the adjudications of the juvenile court. We granted further review. Upon considering the arguments presented, we affirm both the court of appeals decision and the juvenile court orders.

The children's father is F.H., born March 24, 1956, and their mother is C.H., born September 20, 1959. The underlying juvenile court proceeding concerns their relationship with their minor children, L.H., born September 14, 1978, and J.H., born March 22, 1987.

F.H. and C.H. are the parents of three other children. Jeremy, born August 8, 1979, S.H., born August 29, 1980, and D.H., born May 9, 1985. D.H. died on December 4, 1989. S.H. is permanently institutionalized in a psychiatric facility. Parental rights with respect to Jeremy were voluntarily terminated by summary adjudication of the juvenile court on October 29, 1984.

Prior to 1984, DHS provided substantial social services to this family, although no CINA adjudication took place. Following the voluntary termination order affecting Jeremy in 1984, DHS has provided this family only minimal and sporadic services with respect to their parenting abilities. In the fall of 1989, the parents separated. The mother, C.H., suffered a mild heart

attack and was physically unable to care for the three children who remained in her custody. As a result, she sought to establish a voluntary guardianship for these children in the probate court in Scott County.

The maternal grandmother of L.H., J.H., and D.H. was appointed their guardian by the probate court in September 1989. Shortly thereafter the children moved to California with their guardian. In December 1989, D.H. died, apparently as the result of physical abuse at the hands of the guardian.

On January 26, 1990, both parents joined in an application to terminate the guardianship previously established and regain custody of the two children remaining in California. While the petition to terminate the guardianship was pending, the State commenced CINA proceedings in juvenile court in Scott County with respect to L.H. and J.H. Ultimately, the probate court in Scott County terminated the guardianship, and the juvenile court adjudicated L.H. and J.H. to be children in need of assistance on July 3, 1990.

Following this CINA adjudication, the juvenile court ordered DHS to maintain custody of L.H. and J.H. and to secure their return to Iowa for purposes of establishing a permanency plan consistent with Iowa Code section 232.102(6) (1989).[1] DHS sought a stay of the requirement for the children's return to Iowa and, on July 26, 1990, filed a petition to terminate the parental rights of F.H. and C.H. In connection with seeking a stay of the children's return to Iowa, the juvenile court was advised by DHS that permanency planning for the children would best be served by locating L.H. and J.H. in a permanent familial setting in California.

On September 21, 1990, a hearing was held on the State's petition for termination of parental rights. After hearing the evidence, the juvenile court denied the application. The court concluded that the temporal proximity of the CINA and termination petitions, coupled with the absence of any significant DHS activity with the family subsequent to 1984, precluded any mean-

ingful determination concerning the parents' "ability or willingness to respond to services that would correct the situation." *See* Iowa Code § 232.116(1)(f)(3).

Following the order denying termination of parental rights, the juvenile court ruled that, although the children need not be returned from California forthwith, DHS should develop a plan for their return as soon as reasonably practicable, coupled with a suggested course of action for preserving the parental relationship if at all possible.

After the decision of the court of appeals affirming the juvenile court and during the pendency of further review by this court, the parents have filed matters which suggest that the State's continuing challenge to the return of the children to Iowa has become moot. The State has moved to strike portions of this material as being proof of facts that are outside the record.

▌ Matters that are technically outside the record may be submitted in order to establish or counter a claim of mootness. We consider matters that have transpired during the appeal for this limited purpose. Based on the most recent juvenile court petitions and orders that have been submitted, we believe any issue concerning the propriety of the minor children remaining in the State of California has been rendered moot. It is clear that DHS's efforts to invoke permanency planning in that state were, for whatever reason, without success. The children have since been returned to Iowa, and their welfare is now properly the subject of continuing orders of the Iowa juvenile court entered during the pendency of these proceedings.

▌ Appellants contend that they presented clear and convincing evidence to establish a statutory ground for termination of the parental rights of F.H. and C.H. This claim must be considered in relation to the particular statutory provision upon which the State relied in the juvenile court proceeding. The effort to terminate parental rights in the juvenile

---

1. This statute has been renumbered by the Code Editor as Iowa Code § 232.102(7) (1991).

court was based exclusively on the provisions of Iowa Code section 232.116(1)(f), which provides:

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and child on any of the following grounds:

. . . .

*f.* The court finds that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(f) (1989) (as amended by 1989 Iowa Acts ch. 229, § 10, effective July 1, 1989).

Appellants urge that, unlike several of the other grounds for termination listed in section 232.116(1), subsection (f) does not require as a condition of termination that a specified minimum period of time has elapsed following a CINA adjudication. From this premise, they argue that it was permissible for the State to seek termination of parental rights at any time after the CINA adjudication. Although this contention may be correct as an abstract proposition, it does not benefit appellants in the present case. Although section 232.-116(1)(f) does not demand the passage of a minimum period of time following the CINA adjudication, it does contain other requirements that appellants have failed to establish.

In any CINA adjudication placing custody with DHS,

the department or agency shall submit a case permanency plan to the court and shall make every effort to return the child to the child's home as quickly as possible consistent with the best interest of the child. . . . [T]he department or agency shall make every reasonable effort to place the child within Iowa, in the least restrictive setting available, and in close proximity to the parents' home, consistent with the child's best interests and special needs.

Iowa Code § 232.102(6) (1989).[2] The latter statute also provides that "the court may direct the department or other agency to provide services to the child's parent, guardian or custodian in order to enable them to resume custody of the child." *Id.* The juvenile court ordered compliance with this statute at the time of the CINA adjudication involving these children. Consequently, the need to show, as grounds for termination under section 232.116(1)(f), that "an additional period of rehabilitation would not correct the situation" requires a prior effort to formulate and implement a rehabilitative permanency plan under section 232.102(6). In the present case, there was no attempt made by appellants to comply with this requirement.[3]

The absence of a fixed time period for return of the children to the home as a condition for termination under section 232.116(1)(f) is explained, we believe, by the language linking that section to termination of parental rights "with respect to another child who is a member of the same family." The significance of this language appears to be that such a prior adjudication will ordinarily have provided a useful insight concerning the parents' ability to function within the goals of an earlier permanency plan. In the present case, the

---

2. The remedial features of this statute appear to be necessary for continued funding under the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 671(a)(15).

3. It does not aid appellants that the 1989 amendment to § 232.116(1)(f) deleted express mention of whether the child can be returned to the parents. Such a requirement remains implicit in the statutory scheme.

termination of parental rights involving Jeremy occurred in 1984. It was by summary voluntary adjudication and did not involve a CINA adjudication or formulation of a permanency plan. This circumstance thus sheds little light on the parents' problems with their remaining children in 1990.

Faced with the inadequacy of their showing as to a statutory ground for termination of the parental rights of F.H. and C.H., appellants urge that termination of those rights is nevertheless justified based on the best interests of the children. The clear answer to this contention is that termination of parental rights may not occur except on a showing of one or more of the statutory grounds that the legislature has established. *In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988). To the extent that Iowa Code section 232.116(2) conditions the ultimate termination decision upon "the physical, mental, and emotional condition and needs of the child," this serves as a basis for refusing to terminate parental rights when the statutory grounds appear to be present. *In re S.J.*, 451 N.W.2d 827, 832–33 (Iowa 1990). It does not provide an independent basis for granting a termination petition.

We have considered all arguments presented and conclude that the juvenile court acted properly in refusing to terminate parental rights. Issues raised by appellants with respect to the CINA dispositional orders for return of the children to Iowa have been rendered moot for reasons previously discussed. We therefore do not consider those matters. The judgment of the district court is affirmed.

DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENTS AFFIRMED.